UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

KISH CHANDLER

    Plaintiff,

v.

JASON COOPER, et al.,

    Defendants.

No. 5:25-CV-013-H

## ORDER

    The plaintiff, Kish Chandler, filed suit against the National Association of Intercollegiate Athletics (NAIA), alleging an antitrust violation of the Sherman Act, 15 U.S.C. § 1, and against Wayland Baptist University (WBU) and two members of its administration, Jason Cooper and Claude Lusk (collectively the WBU defendants), for negligence.  In short, the plaintiff claims that NAIA's rule limiting a collegiate athlete's years of eligibility unreasonably restrains competition and that the WBU defendants' negligence in advising the plaintiff under these rules caused her to lose a year of eligibility.

    NAIA removed the case based on federal-question jurisdiction.  Dkt. No. 1.  NAIA and the WBU defendants both moved to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6).  Dkt. Nos. 21; 27.  Because Chandler fails to state a plausible Sherman Act violation, the Court grants NAIA's motion to dismiss (Dkt. No. 27).  And because any amendment would be futile, the Court denies the plaintiff's request to amend this claim and dismisses NAIA from the suit.  Additionally, because the Court does not have original jurisdiction over the remaining state-law negligence claims against the WBU defendants, the Court remands the case to state court and denies the WBU defendants' motion to dismiss (Dkt. No. 21) as moot, without prejudice to refiling in state court.

1.  **Factual and Procedural Background**

    A.  **Factual Background**[1]

Kish Chandler is a collegiate women's basketball player who received a scholarship from WBU to play basketball during the 2023–2024 school year and then serve as a graduate assistant the following year. Dkt. No. 1-19 ¶¶ 10–11. In August 2023, Chandler suffered an injury that prevented her from playing in the 2023–2024 season. *Id.* ¶¶ 14–16. Instead, she became a graduate assistant on the women's basketball coaching staff, with the understanding that she would return to play on the team for the 2024–2025 season. *Id.* ¶¶ 17–18. Chandler also enrolled as a full-time student at WBU during the 2023–2024 school year. *Id.* ¶ 20.

During her time as a graduate student, Chandler's relationship with Jason Cooper, the WBU women's basketball coach, deteriorated, and she decided to transfer at the end of the 2023–2024 school year. *See id.* ¶¶ 21–23. Chandler accepted a scholarship offer to play basketball at Lourdes University. *Id.* ¶ 26. Following her transfer, NAIA informed Chandler and Lourdes University that Chandler was ineligible to play basketball during the 2024–2025 season because, under the NAIA rules, her eligibility terminated upon her completion of ten semesters of school at the conclusion of the 2023–2024 school year. *Id.* ¶¶ 24–25, 27, 30, 37.

Under the relevant NAIA eligibility rules, "[a] student may participate four seasons in one sport in 10 semesters, 12 trimesters or 15 quarters of attendance if otherwise eligible." *Id.* at p. 118. "The 10 semesters need not be consecutive." *Id.* "A student terminates

---

[1] The factual allegations are taken from the plaintiff's first amended petition (Dkt. No. 1-19), which the Court accepts as true when resolving a motion to dismiss. *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016).

athletic eligibility at the end of a term upon completing 10 semesters, 12 trimesters or 15 quarters in which the student is identified." *Id.* at p. 121. Furthermore, a student is considered "identified" if the student "[r]epresent[s] an institution in an intercollegiate contest or enroll[s] in 12 or more institutional credit hours with a minimum of nine institutional credit hours at the NAIA member institution in any given term." *Id.* at p. 97.

Lourdes University requested an exception for Chandler from the NAIA's Eligibility Committee to play basketball for the 2024–2025 school year, but the committee denied the request. *Id.* ¶¶ 27–30. According to Chandler, she lost her final year of eligibility because WBU, by way of Cooper and Lusk (the Senior Vice President of Operations and Student Life), failed to properly educate and advise her as to NAIA's eligibility rules and the maximum number of hours she could take in the 2023–2024 school year to retain athletic eligibility for the 2024–2025 school year. *Id.* ¶¶ 4, 24–26. She further claims that WBU failed to report its own violation of NAIA's rules regarding WBU's duty to educate her on eligibility rules and that NAIA failed to consider WBU's violative conduct when making its decision. *Id.* ¶¶ 29, 31–36. In her Sherman Act claim, Chandler challenges the NAIA eligibility rule as applied to injured athletes, contending that it is unreasonable, arbitrary, and illegally restrains competition. *See id.* ¶¶ 74–81.

**B.     Procedural History**

Chandler filed suit in the 64th Judicial District of Hale County, Texas, on November 1, 2024, alleging a negligence claim against the WBU defendants and a claim for injunctive relief against NAIA. Dkt. No. 1-5 ¶¶ 45–49, 52–67. She also sought a temporary restraining order, asking the state court to enjoin NAIA from enforcing its eligibility rule as

to Chandler. *Id.* ¶¶ 68–71. The state court denied the TRO request on November 18. Dkt. No. 1-15.

In January 2025, Chandler filed an amended petition, adding her Sherman Act claim against NAIA and seeking reconsideration of the state court's denial of the TRO. *See generally* Dkt. No. 1-19. Shortly thereafter, NAIA removed the suit to this Court based on federal-question jurisdiction. Dkt. No. 1. The plaintiff requested a hearing on her motion for reconsideration of the TRO but, due to her failure to comply with local rules, the Court denied the motion for reconsideration and the motion for a hearing. *See* Dkt. Nos. 13; 15; 17; 18.

NAIA and the WBU defendants now seek dismissal of all claims against them. Dkt. Nos. 21; 27. Both motions are fully briefed and ripe for review. *See* Dkt. Nos. 35; 39; 43; 44. The trial is set for July 13, 2026. Dkt. No. 26 at 1.

**2.    NAIA's Motion to Dismiss**

Because the Court's original federal-question jurisdiction is dependent upon survival of the plaintiff's Sherman Act claim, the Court first considers NAIA's motion to dismiss.

**A.    Legal Standards**

**i.    Federal Rule of Civil Procedure 12(b)(6)**

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter which, when taken as true, states 'a claim to relief that is plausible on its face.'" *Innova Hosp. S.A., Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, the plaintiff must plead facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). If a complaint pleads facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In resolving a motion to dismiss, a court must "accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff." *Richardson v. Axion Logistics, L.L.C.*, 780 F.3d 304, 306 (5th Cir. 2015) (cleaned up) (quoting *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010)). But a court should not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" for purposes of stating a plausible claim to relief. *Iqbal*, 556 U.S. at 678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

### ii.    Federal Rule of Civil Procedure 15

Federal Rule of Civil Procedure 15(a)(1) allows a party to amend a pleading "once as a matter of course" within 21 days of serving the pleading or receiving the opposing party's responsive pleading or motion. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). When evaluating whether to allow leave to amend under Rule 15, "[t]he court should freely give leave when justice so requires." *Id.* The Rule 15 standard

favors granting leave to amend, and a district court must have a "substantial reason" for denying leave. *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (quoting *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005)). In deciding whether to allow amendment of the complaint, a district court may consider factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , and futility of the amendment." *Id.* (alteration in original) (quoting *Jones*, 427 F.3d at 994).

### B.     Analysis

In her Sherman Act antitrust claim, the plaintiff contends that NAIA's eligibility rules "unlawfully restrain the ability of college athletes to fully complete four (4) full seasons of athletic competition after experiencing catastrophic or life-altering injuries." Dkt. No. 1-19 ¶ 75. NAIA seeks dismissal of this claim, arguing that the plaintiff's allegations are legal conclusions unsupported by sufficient factual allegations and that the plaintiff has failed to plead facts sufficient to state the relevant market or an antitrust injury. *See* Dkt. No. 28 at 11–22.

As a threshold matter, the Court must decide whether the NAIA eligibility rules limiting the total number of seasons a student athlete may play based on the number of course hours completed are commercial in nature and, thus, subject to antitrust scrutiny. Recently, the Supreme Court allowed antitrust claims based on student-athlete compensation rules. *See National Collegiate Athletic Association v. Alston*, 594 U.S. 69 (2021). But district courts are split as to whether athletic organizations' eligibility rules limiting the amount of time an athlete can play may properly form the basis of an antitrust dispute. The

Court aligns with district courts that have determined that athletic organizations' eligibility rules limiting total playing time are not commercial in nature and thus concludes that the Sherman Act is inapplicable to the challenged NAIA rules. Eligibility rules seek to ensure fair completion among college athletes—not regulate or restrain commerce. Even if applicable, the Court concludes that the plaintiff has not alleged facts that, if true, state the relevant market and, thus, has not stated a plausible Sherman Act claim.

Therefore, the Court grants NAIA's motion to dismiss as to the Sherman Act claim. It further dismisses any remaining claim against NAIA based in equity for failure to pursue such claim beyond the complaint. Additionally, because any amendment to the Sherman Act claim would be futile, the Court denies the plaintiff's request to amend.

### i.    **The Court dismisses the Sherman Act antitrust claim against NAIA.**

The Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 1. A plaintiff asserting an antitrust violation under Section 1 of the Sherman Act must show that "(1) [the defendant] engaged in a conspiracy, (2) the conspiracy had the effect of restraining trade, and (3) trade was restrained in the relevant market." *Marucci Sports*, 751 F.3d at 373 (quoting *Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 627 (5th Cir. 2002)). NAIA contends that the plaintiff has failed to plead facts that, if true, state the latter two elements.

### a.    **The NAIA eligibility rule is not commercial in nature and, thus, not subject to antitrust scrutiny.**

To constitute an antitrust violation, the alleged restraint must restrain "trade or commerce." 15 U.S.C. § 1. In the world of collegiate athletics, most, if not all, of the asserted antitrust violations relate to the rules promulgated by the National Collegiate

Athletic Association (NCAA). The Supreme Court recognized in *National Collegiate Athletic Association v. Board of Regents of the University of Oklahoma*, 468 U.S. 85 (1984), that the NCAA "needs ample latitude" to "play[] [its] critical role in the maintenance of a revered tradition of amateurism in college sports." *Id.* at 120. However, in a landmark decision, *National Collegiate Athletic Association v. Alston*, 594 U.S. 69 (2021), the Supreme Court somewhat curtailed this latitude by affirming the district court's conclusion that certain rules regarding student-athlete compensation violate antitrust laws. Following *Alston*, "the [NCAA] drastically changed the landscape of college athletics by allowing student-athletes to earn compensation for their name, image, and likeness [(NIL)]." *Tennessee v. Nat'l Collegiate Athletic Ass'n*, 718 F. Supp. 3d 756, 759 (E.D. Tenn. 2024).

Prior to *Alston*, the Fifth Circuit recognized that the Supreme Court's decision in *Board of Regents* "distinguished between the restraints at issue in that case—limitations on football telecasts—and 'rules defining the conditions of the contest, *the eligibility of participants*, or the manner in which members of a joint enterprise shall share the responsibilities and the benefits of the total venture.'" *Marucci Sports*, 751 F.3d at 374 (emphasis added) (quoting *Bd. of Regents*, 468 U.S. at 117). The Fifth Circuit went on to state that these types of rules—including those affecting student-athlete eligibility—are "presumptively procompetitive and are not generally deemed unlawful restraints on trade." *Id.* And, relatedly, prior to *Alston*, "many district courts . . . held that the Sherman Act does not apply to the NCAA's promulgation and enforcement of eligibility requirements" because such rules are noncommercial in nature. *Smith v. Nat'l Collegiate Athletic Ass'n*, 139 F.3d 180, 185 (3d Cir. 1998) (collecting cases), *vacated on other grounds*, 525 U.S. 459 (1999); *see also O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 802 F.3d 1049, 1065 (9th Cir. 2015)

(concluding that NCAA eligibility rules are noncommercial in nature because they "primarily seek to ensure fair competition in intercollegiate athletics").

There is no post-*Alston* authority from the Fifth Circuit or its district courts addressing whether the eligibility rules promulgated by the NCAA (or any other collegiate athletic governing body) can violate the antitrust provisions of the Sherman Act. Courts outside of the Fifth Circuit have reached varying conclusions as to whether NCAA rules other than compensation rules restrain trade now that restrictions on NIL compensation have been lifted. For example, one district court in Tennessee stated that "when the NCAA lifted the restriction on NIL compensation, rules regulating who can play—*i.e.*, who can enter the labor market . . .—became 'commercial in nature.'" *Pavia v. Nat'l Collegiate Athletic Ass'n*, 760 F. Supp. 3d 527, 537 (M.D. Tenn. 2024) (emphasis in original), *appeal docketed*, No. 24-6153 (6th Cir. Dec. 26, 2024).[2] However, a court in a neighboring district noted that "[n]othing in *Alston* states that all NCAA eligibility rules are commercial in nature" and highlighted Justice Kavanaugh's concurrence that noted *Alston*'s applicability to "only a narrow subset of the NCAA's *compensation* rules." *Osuna v. Nat'l Collegiate Athletic Ass'n*,

---

[2] *See also Fourqurean v. Nat'l Collegiate Athletic Ass'n*, 771 F. Supp. 3d 1043, 1051 (W.D. Wis. 2025), *rev'd*, --- F.4th ----, No. 25-1187, 2025 WL 1944005 (7th Cir. July 16, 2025) ("Arguably, therefore, *Alston* holds that any restraints by defendant on student-athlete eligibility harms competition."); *Ohio v. Nat'l Collegiate Athletic Ass'n*, 706 F. Supp. 3d 583, 594 (N.D. W.Va. 2023) (finding eligibility rule requiring transfer student to "sit out" for a year a restraint on trade and subject to the Sherman Act); *Elad v. Nat'l Collegiate Athletic Ass'n*, No. 25-1981, 2025 WL 1202014, at *7 (D.N.J. Apr. 25, 2025) ("[T]he [eligibility rule counting an athlete's time at a junior college] is commercial in nature because a NIL agreement is a commercial transaction and the [eligibility rule] limits who is eligible to play and therefore to negotiate a NIL agreement.").

No. 3:25-CV-62, 2025 WL 684271, at *3 (E.D. Tenn. Mar. 3, 2025) (emphasis in original) (quoting *Alston*, 594 U.S. at 108) (Kavanaugh, J., concurring)).[3]

Notably, all of these district court orders resolve a plaintiff's request for injunctive relief and not a defendant's request for dismissal of a plaintiff's antitrust claim. And, interestingly, the split among district courts appears to align with the plaintiff-athletes' potential for NIL income. One district court "observe[d], without commenting on its significance, that *Osuna Sanchez*, *Arbolida*, *Ciulla-Hall*, and *Goldstein* (where the NCAA prevails) each involve baseball players, while *Pavia*, *Fourqurean*,[4] and [its current] case (where the players prevail) each involve football players." *Elad v. Nat'l Collegiate Athletic Ass'n*, No. 25-1981, 2025 WL 1202014, at *10 n.5 (D.N.J. Apr. 25, 2025).

Taking all of these authorities into account, with respect to the NAIA rule limiting the number of years or number of semesters an athlete may be eligible to play, the Court follows the Fifth and Ninth Circuits' reasoning in *Marucci Sports* and *O'Bannon* and the

---

[3] *See also Brzovic v. Nat'l Collegiate Athletic Ass'n*, No. 2:25-cv-2885, 2025 WL 1370758, at *4 (D.S.C. May 11, 2025) ("The text of the Five-Year Rule contains only regulations and guidance on student-athlete eligibility to participate in intercollegiate athletics—the text does not include any mention of business or commercial transactions."); *Goldstein v. Nat'l Collegiate Athletic Ass'n*, No. 3:25-CV-027, 2025 WL 662809, at *4 (M.D. Ga. Feb. 28, 2025) ("The [rules limiting the number of years a collegiate athlete may play] . . . simply aren't commercial in nature despite [the plaintiff's] efforts to intertwine them with what he and his agent swear are 'significant' opportunities to capitalize off his NIL."); *cf. Arbolida v. Nat'l Collegiate Athletic Ass'n*, No. 25-2079-JWB, 2025 WL 579830, at *3 (D. Kan. Feb. 21, 2025) ("By placing eligibility limits on students, the NCAA member institutions are increasing competition between themselves by imposing a limit on the potential labor supply."); *Ciulla-Hall v. Nat'l Collegiate Athletic Ass'n*, No. 25-cv-10271, 2025 WL 438707, at *2–3 (D. Mass. Feb. 7, 2025) (denying temporary injunctive relief because, based on the limited record, the plaintiff had not shown a likelihood that the NCAA Division II rules were an undue restraint on trade and had created the emergent situation, at least in part, by delaying in seeking injunctive relief).

[4] Following *Elad*, the Seventh Circuit reversed the district court's grant of a temporary restraining order in *Fourqurean*. *See Fourqurean*, --- F.4th ----, 2025 WL 1944005, at *8 ("Given the dearth of evidence (or even allegations) of anti-competitive effect offered by Fourqurean so far, he has failed to show some likelihood that the Five-Year Rule constitutes an unreasonable restraint of trade.")

post-*Alston* district court opinions that determine that, unlike the NCAA compensation rules evaluated in *Alston*, eligibility rules like the NAIA rule at issue are not commercial in nature and, thus, not subject to antitrust scrutiny. The plaintiff's assertion that counting the semesters an injured athlete is enrolled in at least 12 hours towards the student's athletic eligibility harms competition in the relevant market does not necessarily bring the rule under the purview of antitrust scrutiny. The Supreme Court specifically limited its holding in *Alston* to certain NCAA compensation rules and did not disturb case law regarding NCAA eligibility rules. And the Fifth Circuit's recognition in *Marucci Sports* of the distinction of certain NCAA rules—including eligibility rules—as those intended to regulate competition rather than affect the commercial aspect of the NCAA remains intact.[5] The plaintiff has not pled facts or cited any binding authority indicating that the NAIA's eligibility rule requiring all full-time student athletes, injured or otherwise, to count all semesters towards their athletic eligibility is commercial in nature. And, even if the facts of a case warranted this conclusion, given that the Supreme Court limited its holding in *Alston* to compensation rules and the Fifth Circuit has not overruled its prior holding in *Marucci Sports* that eligibility rules are not unlawful restraints on trade, the Court has no power to depart from this holding. *Alvarez v. City of Brownsville*, 904 F.3d 382, 398 (5th Cir. 2018) (en banc) (Ho, J., concurring)

---

[5] Similar to *Marucci Sports*, in *O'Bannon*, the Ninth Circuit distinguished between the NCAA's "true" eligibility rules such as "rules limiting the number of years that student-athletes may play collegiate sports or requiring student-athletes to complete a certain number of credit hours each semester" because they are "not related to the NCAA's commercial or business activities." *O'Bannon*, 802 F.3d at 1066. "Rather than intending to provide the NCAA with a commercial advantage, the eligibility rules primarily seek to ensure fair competition in intercollegiate athletics." *Id.* at 1065 (quoting *Smith v. Nat'l Collegiate Athletic Ass'n*, 139 F.3d 180, 185 (3d Cir. 1998), *vacated on other grounds*, 525 U.S. 459 (1999)). And nothing in *Alston* requires doing away with this distinction. *See Osuna*, 2025 WL 684271, at *3–4.

("[I]t is long established that district courts are bound to follow circuit precedent unless it directly conflicts with Supreme Court precedent.").

In light of the bare allegations in the complaint of potential financial harm to competition and the Fifth Circuit's undisturbed distinction of eligibility rules in *Marucci Sports*, the Court concludes that "the eligibility rule[] primarily seek[s] to ensure fair competition in intercollegiate athletics." *O'Bannon*, 802 F.3d at 1065. Thus, with respect to the NAIA eligibility rules at issue here, the Court concludes that such a restriction is not a restraint on commerce or trade and, thus, not subject to the Sherman Act.

> **b.    Even if the Sherman Act were applicable, the plaintiff has not pled facts that, if true, show that the challenged rule has an anticompetitive effect in the relevant market.**

When determining whether a restraint constitutes an antitrust violation, "for restraints at opposite ends of the competitive spectrum . . . a quick look is sufficient for approval or condemnation." *Alston*, 594 U.S. at 88. In fact, "some restraints may be so obviously incapable of harming competition that they require little scrutiny." *Id.*

For the "restraints in the great in-between," *id.*, courts apply the "rule of reason" by "consider[ing] all of the circumstances to determine whether a restrictive practice imposes an unreasonable restraint on competition." *Marucci Sports*, 751 F.3d at 374. In doing so, courts apply "a three-step, burden-shifting framework." *Alston*, 594 U.S. at 96 (quoting *Ohio v. Am. Express Co.*, 585 U.S. 529, 541 (2018)). First, the plaintiff must show that the restraint harmed competition in the relevant market. *Id.* If the plaintiff does so, "the burden then 'shifts to the defendant to show a procompetitive rationale for the restraint.'" *Id.* (quoting *Am. Express*, 585 U.S. at 541). And, if the defendant makes the requisite showing, the burden shifts back to the plaintiff "to demonstrate that the procompetitive efficiencies could

be reasonably achieved through less anticompetitive means." *Id.* (quoting *Am. Express*, 585 U.S. at 541).

"Whether an antitrust violation exists necessarily depends on a careful analysis of market realities. If those market realities change, so may the legal analysis." *Id.* at 93 (citation omitted). "[C]ourts usually cannot properly apply the rule of reason without an accurate definition of the relevant market." *Am. Express*, 585 U.S. at 543. And "the relevant market is defined as 'the area of effective competition.'" *Id.* (quoting *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 (1965)). "Typically this is the 'arena within which significant substitution in consumption or production occurs.'" *Id.* (quoting P. Areeda & H. Hovenkamp, Fundamentals of Antitrust Law § 5.02 (4th ed. 2017)).

The Fifth Circuit has held that, although defining the relevant market is typically a question of fact, a court may decide it as a matter of law and grant a motion to dismiss when the plaintiff: (1) "fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand," or (2) "alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor." *Apani Sw.*, 300 F.3d at 628; *see also New Orleans Ass'n of Cemetery Tour Guides & Cos. v. New Orleans Archdiocesan Cemeteries*, 56 F.4th 1026, 1037 (5th Cir. 2023) ("A district court can dismiss Sherman Act claims for failure to properly define the relevant market.").

For example, in *New Orleans Association of Cemetery Tour Guides & Cos.*, the Fifth Circuit affirmed dismissal of a Sherman Act Claim for failure to include reasonable substitute products when the plaintiff attempted to limit the relevant market to cemetery tours in New Orleans without including other types of historical tours. 56 F.4th at 1036–38.

The Fifth Circuit found that the plaintiff's allegations that some of its tours included combined historical tours of sites other than cemeteries indicated that "other New Orleans historical site tours are reasonably interchangeable substitutes for cemetery tours." *Id.* at 1038. "Accordingly, a product market limited to cemetery tours alone does not rise to the level of plausibility required to survive a motion to dismiss." *Id.* (citing *Twombly*, 550 U.S. at 570).

Similarly, the plaintiff here references other intercollegiate athletic organizations but, seemingly arbitrarily, limits her definition of the relevant market to "athletic services in women's NAIA basketball and . . . athletic services in all other men's and women's NAIA sports." Dkt. No. 1-19 ¶ 76. However, the plaintiff also identifies the NCAA as the NAIA's "competitor," *id.* ¶ 84, and states that "while [the NAIA] holds a smaller market share than the larger, much-sued NCAA, it is undeniable that defendant NAIA, along with the NCAA[,] controls virtually all collegiate athletic competition opportunities for graduate athletes," *id.* ¶ 87. She further compares the eligibility rules of the NCAA and the National Junior College Athletic Association (NJCAA) with the eligibility rules of the NAIA and states that all such rules—regardless of the governing organization—are undue restraints on trade. *Id.* ¶ 94. And the NAIA's handbook clearly contemplates the transfer of students from non-NAIA institutions to NAIA institutions in its eligibility rules. *See, e.g., id.* at p. 103 (discussing "charging" a student transferring from a junior college during an academic year "one season of competition").

Despite references to the competition for student-athletes among institutions in different athletic organizations, the plaintiff does not allege any facts to support her assertion that the relevant market is limited to athletic services offered by the NAIA. In her response

– 14 –

to the motion to dismiss, she merely restates her alleged relevant market with no indication of why she excluded other intercollegiate athletic associations including, for example, the NJCAA or the United States Collegiate Athletic Association (USCAA). The plaintiff's allegations, taken as true at the pleading stage, indicate that athletic services offered by other organizations may, in fact, be reasonable substitutes[6] for the purpose of defining the relevant market. *See New Orleans Ass'n of Cemetery Tour Guides & Cos.*, 56 F.4th at 1036–38. "Accordingly, a product market limited to [the NAIA] alone does not rise to the level of plausibility required to survive a motion to dismiss." *Id.* at 1038 (citing *Twombly*, 550 U.S. at 570). Therefore, even if the challenged NAIA eligibility rule could serve as the basis for a

---

[6] Also relevant here, in *Alston*, the Supreme Court "gave high praise to the district court's 'thoughtful legal analysis consistent with established antitrust principles,'" *Goldstein*, 2025 WL 662809, at *4 (quoting *Alston*, 594 U.S. at 81, 107), and noted the following with respect to the NCAA's market dominance in the NIL arena: "There are no 'viable substitutes' [for the NCAA], as the 'NCAA's Division I essentially *is* the relevant market for elite college football and basketball.'" *Alston*, 594 U.S. at 81 (quoting *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 375 F. Supp. 3d 1058, 1067, 1070, 1097 (N.D. Cal. 2019), *aff'd*, 958 F.3d 1239 (9th Cir. 2020), *aff'd sub nom. Alston*, 594 U.S. 69) (internal citations omitted). Relatedly, the district court in *Alston* also found that "possible alternatives, such as the National Association of Intercollegiate Athletics (NAIA) or the National Christian College Athletic Association (NCCAA), have not proved to be viable substitutes." *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 375 F. Supp. 3d at 1067. Thus, although the plaintiff refers to the NCAA as a "competitor," the more realistic substitutes to consider when defining the relevant market would not include the NCAA.

Sherman Act violation, the plaintiff has failed to sufficiently plead the relevant market; dismissal is appropriate on this basis as well.[7]

### ii. The Court denies the plaintiff's request for leave to amend.

The plaintiff does not propose amendments but, instead, generally requests leave to amend if the motion to dismiss is granted. Dkt. No. 40 at 15. "Although [the Fifth Circuit has] not provided strict guidelines as to what constitutes a sufficient request for leave to amend, it is clear that *some* specificity is required." *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016); *see also Goldstein v. MCI WorldCom*, 340 F.3d 238, 254–55 (5th Cir. 2003) (affirming denial of motion for leave to amend where the request stated only: "Should this Court find that the Complaint is insufficient in any way, however, plaintiffs respectfully request leave to amend."). Additionally, this Court's Local Rules require any party seeking leave to amend to attach a proposed amended complaint to any such request. Loc. Civ. R. 15.1. Thus, because the plaintiff makes only a general request to amend any claims the Court dismisses, the Court denies her request for leave to amend.

---

[7] Because the Court finds that the plaintiff has not sufficiently pled facts that show the relevant antitrust market, it need not reach the question of whether the plaintiff has sufficiently alleged a market-wide anticompetitive effect. Even so, the plaintiff has likely failed to sufficiently plead this element as well. The plaintiff generally alleges that the NAIA eligibility rule has "denied" her "potential name, image and likeness (NIL) opportunities" and "limited [her] chances at future potential earnings." Dkt. No. 1-19 ¶¶ 39, 78. However, even if the eligibility rule affects the amount of compensation she could receive, "[she] has not alleged any facts . . . showing how they produce a market-wide impact." *Goldstein*, 2025 WL 662809, at *5. "Antitrust injury fleshes out the basic idea that '[t]he antitrust laws were enacted for the protection of *competition*, not *competitors*.'" *Pulse Network, L.L.C. v. Visa, Inc.*, 30 F.4th 480, 488 (5th Cir. 2022) (alteration and emphasis in original) (quoting *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 338 (1990)). And the Fifth Circuit has long-held that "[s]peculation about anticompetitive effects is not enough." *Marucci Sports*, 751 F.3d at 376 (quoting *Roy B. Taylor Sales, Inc. v. Hollymatic Corp.*, 28 F.3d 1379, 1385 (5th Cir. 1994)).

Moreover, any amendment would be futile. *See Marucci Sports*, 751 F.3d at 378. Because the Court, based on binding Fifth Circuit precedent, concludes that the challenged NAIA eligibility rule is non-commercial in nature and not subject to antitrust scrutiny, no amendment to the plaintiff's Sherman Act claim based on this rule would save it from dismissal. Accordingly, the Court denies the plaintiff leave to amend and dismisses her Sherman Act claim with prejudice.

### iii. To the extent the plaintiff alleges a claim in equity against NAIA, the Court dismisses this claim because the plaintiff failed to pursue it beyond the initial pleading.

The plaintiff includes a claim entitled "CAUSE OF ACTION: NAIA (INEQUITABLE)" in her operative pleading. *See* Dkt. No. 1-19 ¶¶ 58–73. Within this section, she restates many of her allegations and her request for injunctive relief. *Id.* The defendant seeks dismissal of any separate claim for negligence or request for injunctive relief, Dkt. No. 28 at 23–26, and the plaintiff wholly fails to respond to these arguments. *See generally* Dkt. No. 40. Failure to pursue a claim beyond a complaint constitutes abandonment of that claim. *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006). Thus, to the extent the complaint asserts any claims against NAIA apart from the Sherman Act claim, the Court dismisses them with prejudice.

### 3. WBU Defendants' Motion to Dismiss

Because the Court dismisses the plaintiff's Sherman Act claim with prejudice, it remands the remaining pendant state-law negligence claims against the WBU defendants and denies the WBU defendants' motion to dismiss as moot, without prejudice to reurging these arguments in state court.

### A. Supplemental Jurisdiction

A district court with original jurisdiction over a claim may exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). However, a district court may decline to exercise its supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3).

When a party removes a case based on federal-question jurisdiction, in deciding whether to remand remaining state-law claims once all federal claims have been dismissed, the Court must consider the "common law factors of judicial economy, convenience, fairness, and comity." *Johnston v. Dexel*, 373 F. Supp. 3d 764, 775 (S.D. Tex. 2019) (quoting *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009)). Most often "a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial." *Id.* (quoting *Heggemeier v. Caldwell County*, 826 F.3d 861, 872 (5th Cir. 2016)). "District courts enjoy wide discretion in determining whether to retain supplemental jurisdiction over a state claim once all federal claims are dismissed." *Id.* (quoting *Heggemeier*, 826 F.3d at 872).

### B. The Court remands the case to state court and denies the WBU defendants' motion to dismiss as moot.

All relevant factors indicate that the remaining claims are appropriate for remand. First, at this early stage in the case, this Court is unfamiliar with the merits of the state-law negligence claims against the WBU defendants and, thus, remand does not raise judicial-economy concerns. *See Mendoza v. Murphy*, 532 F.3d 342, 347 (5th Cir. 2008). Next, remand to state court is more convenient for the remaining parties, as this Court is located in Lubbock County, Texas, and all remaining parties reside in Hale County, Texas,

where the state court is located.  *See* Dkt. No. 1-19 ¶¶ 2–5; *see also Enochs v. Lampasas County*, 641 F.3d 155, 158–60 (5th Cir. 2011).  Furthermore, there are no apparent concerns of fairness or prejudice to the parties if remanded, and, as the remaining claims are pure state-law negligence claims, comity dictates that, as a federal court of limited jurisdiction, this Court is "not as well equipped for determinations of state law as are state courts." *Enochs*, 641 F.3d at 160.

Because all factors weigh in favor of declining to exercise supplemental jurisdiction over the remaining state-law claims, the Court remands the remaining claims to the 64th Judicial District of Hale County, Texas.  Accordingly, the Court also denies the WBU defendants' motion to dismiss the state-law claims as moot without prejudice to refiling in state court because the state court is more equipped to decide the merits of those claims.

**4.    Conclusion**

Because the plaintiff fails to state a plausible Sherman Act violation, the Court grants NAIA's motion to dismiss (Dkt. No. 27).  And because any amendment would be futile, the Court denies the plaintiff's request to amend and dismisses NAIA from the suit. Additionally, because the Court does not have original jurisdiction over the remaining claims—state-law negligence claims against the WBU defendants—the Court remands the case to 64th Judicial District of Hale County, Texas and denies the WBU defendants' motion to dismiss (Dkt. No. 21) as moot, without prejudice to refiling in state court.

So ordered on August 20, 2025.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE